Kevin BALL, et al. Plaintiffs,

v.

AMC ENTERTAINMENT, INC. et al. Defendants.

No. CIV.A. 00–867(GK).

United States District Court, District of Columbia.

Feb. 24, 2003.

Thomas J. Simeone, Simeone & Miller, Washington, DC, for plaintiffs.

Steven John Fellman, David K. Monroe, William Francis Krebs, Galland, Kharasch, Greenberg, Fellman & Swirsky, P.C., Washington, DC, for defendants.

## *MEMORANDUM OPINION*

KESSLER, District Judge.

Plaintiffs are deaf and hard of hearing individuals residing in the Washington, D.C., metropolitan area.[1] They bring this class action against movie theater operators AMC Entertainment, Inc. ("AMC"), and Loews Cineplex Entertainment Corp. ("Loews"). Plaintiffs allege that Defendants violate the Americans with Disabilities Act ("ADA" or "Act"), 42 U.S.C. §§ 12101, *et seq.* (1992), by failing to provide them with the reasonable accommodations necessary for full and equal enjoyment of Defendants' services through implementation of captioning and other interpretive aids.[2] This matter is before the Court on Defendants' Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, submission of Amicus Curiae, the January 22, 2003, Motions Hearing, and the entire record herein, for the reasons discussed below, Defendants' Motion for Summary Judgment is **denied.**

## I. Background [3]

In 1990, Congress enacted the ADA to remedy the "serious and pervasive" problem of discrimination against individuals with disabilities. 42 U.S.C. § 12101(a)(2).

After thoroughly investigating the problem, Congress concluded that there was a "compelling need to provide a clear and comprehensive national mandate" to eliminate discrimination against disabled individuals and integrate them "into the economic and social mainstream of American life." S.Rep. No. 101–116, at 20 (1989); H.R.Rep. No. 101–485, at 50 (1990). To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, including public accommodations.[4] 42 U.S.C. §§ 12181–12189 ("Title III"). Title III of the ADA states that

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

While the ADA set out broad principles for the elimination of discrimination against persons with disabilities, Congress assigned to the Attorney General the specific duty and power to interpret that statute and set standards for enforcement and compliance of Title III of the Act. *See* 42 U.S.C. § 12186(b).[5] Congress also directed the Architectural and Transportation Barriers Compliance Board ("ATBC Board") to issue "minimum guidelines" for Title III. 42 U.S.C. § 12204(a). Those

---

1. Members of the Plaintiff class will be referred to as "deaf individuals" for economy of wording.

2. The ADA authorizes this private right of action at 42 U.S.C. § 12188(a).

3. Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c). Consequently, unless otherwise noted, the Court states only uncontroverted facts.

4. Public accommodations are "private entities...[that] affect commerce." 42 U.S.C. § 12181(7)

5. Excepted from this delegation were ADA transportation matters, which were delegated to the Department of Transportation.

guidelines—the ATBC Board's ADA Accessibility Guidelines ("ADAAG")—do not have any binding effect of their own, but instead help shape the Attorney General's regulations, which must be "consistent" with the ADAAG. 42 U.S.C. § 12186(c).

Plaintiffs, who have a disability recognized by the ADA,[6] argue that Defendants' failure to provide reasonable accommodations for deaf patrons desiring to see first run movies[7] shown in Defendants' movie theaters violates the ADA. Because Defendants' movie theaters are places of public accommodation under the ADA,[8] Plaintiffs argue that such accommodations are required by the Act and would not result in a change of Defendants' services or an undue burden upon Defendants. Plaintiffs' complaint seeks an injunction requiring Defendants "to implement the captions and other interpretive aids" necessary to comply with the ADA, which "includes but is not limited to: (a) open captioning devices and (b) closed captioning devices,

such as rear window captioning." Compl. at p. 7 and ¶ 15.[9]

## II. Standard of Review

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable

**6.** A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A).

**7.** First run movies are shown in commercial release at movie theaters, as opposed to later release on video or DVD for home viewing.

**8.** Public accommodations include "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment." 42 U.S.C. § 12181(7)(C).

**9.** For descriptions of open, closed, and rear window captioning ("RWC"), *see* Defs.' Ex. F, ATBC Board's Bulletin # 8: Theatrical Movie Captioning Systems, and Pls.' Opp'n at 1–3.

Captions are textual descriptions of a film's soundtrack, comprised of the dialogue and descriptions of other sounds. There are two types of captioning, open and closed. Open captions are similar to subtitles—the text is "burned" onto the film's print and is visible to everyone in the theater. Open captioning requires special prints of the film that are

generally presented at special screenings, often mid-week and/or mid-day performances; for example, Loews exhibits open captioned films, when available, at its Inner Circle Theatre on Tuesday and Wednesday nights. Defs.' Ex. C, Norris Declar. at ¶ 5. Closed captioning displays the text only to patrons requiring captions, not to everyone in the theater.

RWC is a specific type of closed caption technology. With RWC-compatible movies, captions are recorded on a computer disc, separate from the movie itself but provided free of charge by the movie studios, that is played simultaneously with regular screenings of the movie. As the movie is displayed on the movie screen, the captions are sent to an LED data panel installed on the back wall of the theater. Patrons then use portable, transparent acrylic panels attached to their seats to reflect the LED captions, allowing the captions to appear superimposed on or beneath the movie screen. The reflective panels are portable and adjustable (usually placed in cup holders attached to seats), enabling patrons using RWC to sit almost anywhere in the theater.

to the non-moving party. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985).

## III. Analysis

■ Defendants argue that the ADA and its implementing regulations do not require Defendants' movie theaters to show movies captioned using rear window captioning ("RWC") [10] because: 1) requiring exhibition of captioned movies is explicitly precluded by the Act and DOJ regulations, 2) exhibition of RWC-compatible movies would change the nature or mix of the goods or services Defendants offer,[11] and 3) installation of RWC equipment in Defendants' movie theaters would be unduly burdensome. In making these arguments, Defendants rely primarily on a Department of Justice ("DOJ") regulation for implementing Title III, which states that

A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, *unless* the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

28 C.F.R. § 36.303(a) (1992) (emphasis added). In opposing Defendants' Motion for Summary Judgment,[12] Plaintiffs argue that cost-efficient technology exists to allow deaf persons to attend first run movies without fundamentally altering the nature of movies or resulting in undue burden upon Defendant Theaters.[13]

### A. Requiring Exhibition of Closed Captioned Films, Including RWC, Is Not Explicitly Excluded by the ADA or Its Implementing Regulations.

■ Defendants argue that requiring them to show closed captioned films at their movie theaters is explicitly precluded by the ADA and its implementing regulations. As this is an argument of statutory interpretation, the court must begin with the plain language of the statute. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 474, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Where the language is clear, that is the end of judicial inquiry "in all but the most extraordinary circumstances." *Id.*, 505 U.S. at 474, 112 S.Ct. 2589. However, when the intent of Congress is not clear

---

**10.** Although the parties initially disagreed on the nature of the relief being sought in this case, Plaintiffs have made it clear that the relief sought is "installation of RWC in a fair number of Defendants' screens so that Defendants can make RWC captions available for those movies that [they] would otherwise show, and for which RWC captions are available." Pls.' Opp'n at 5.

**11.** While the Defendants' briefs did not argue that closed captioning would change the *content* of the service they provide, to the extent that they made that argument at the Motions Hearing, the Court finds that implementation of RWC would not change a film's content. *See, e.g.*, Pls. Ex. 2, Christiansen Aff. at ¶ 8 (distribution director for DreamWorks said that "[c]aptioning does not alter the content of a movie").

**12.** Plaintiffs also claim that the law of the case doctrine estops Defendants from making these arguments in their Motion for Summary Judgment because the court denied a Motion to Dismiss presenting these same arguments. However, Plaintiffs' argument is without merit because the Court denied Defendant's earlier motion without prejudice to allow for sufficient development of facts through discovery.

**13.** Since the installation of RWC has become the key concern in this case, Plaintiffs' request for open captioning will not be considered.

from the language itself, the court may "look to the general purpose of Congress in enacting the statute and to its legislative history for helpful clues...[and] must avoid an interpretation that undermines congressional purpose considered as a whole." *U.S. v. Braxtonbrown–Smith,* 278 F.3d 1348, 1352 (D.C.Cir.2002) (*citing United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940)).

The Act itself contains no explicit language regarding captioning in movie theaters, so Defendants rely on statements from the House Committee Report to support their argument that closed captioning of films at their movie theaters is explicitly precluded by the ADA. The Report states that "[o]pen-captioning...of feature films playing in movie theatres, is not required by this legislation." H.R. Rep. No. 101–458(II), at 108 (1990).

According to Defendants, this single statement from the House Committee Report signals unambiguous legislative intent that captioning in movie theaters is not required, but their reliance on the Report is misplaced. As our Court of Appeals recently stated, "reviewing legislative history is like looking over a crowd and picking out your friends," *Community Care Foundation v. Thompson,* 318 F.3d 219 (D.C.Cir.2003) (internal quotations and citation omitted); Defendants have only one friend in this particular crowd. The Report fully recognized that technological advances might ·impose additional ADA requirements on public accommodations in the future, stating that:

> The Committee wishes to make it clear that technological advances can be expected to further enhance options for

making meaningful and effective opportunities available to individuals with disabilities. Such advances may *require* public accommodations to provide auxiliary aids and services *in the future which today would not be required* because they would be held to impose undue burdens on such entities. Indeed, the Committee intends that the types of accommodation and services provided ...[under the ADA] should keep pace with the rapidly changing technology of the times.

H.R. Rep. 101–485(II), at 108 (1990) (emphasis added); *see also Kapche v. City of San Antonio,* 176 F.3d 840, 847 (5th Cir. 1999) (remanding a recent ADA action for the determination of whether new, improved technology—not available when earlier, similar cases were decided—existed that would permit diabetic drivers to operate a vehicle safely).

When the ADA was signed into law in 1990, only open-captioning of theatrical films was in use at that time and there were not yet any systems available for providing closed captions in theaters.[14] Regardless of the House Committee Report's statement concerning open captioning of films, Congress explicitly anticipated the situation presented in this case. Therefore, the isolated statement that open captioning of films in movie theaters was not required in 1990 cannot be interpreted to mean that Defendants cannot *now* be expected and required to provide closed captioning of films in their movie theaters.

Defendants also note that DOJ implementing regulations state that "[m]ovie theaters are not required to present open-captioned films," 28 C.F.R. 36, Appendix

---

14. In fact, Congress at that time still encouraged filmmakers "to produce and distribute open-captioned versions of films" and theaters were "encouraged to have at least some pre-announced screenings of a captioned version of feature films." H.R. No. 101–485(II), at 108 (1990).

B(C) (1992) (DOJ's analysis of 28 C.F.R. § 36.303). Much like the House Committee Report's assessment of captioning in movie theaters, the implementing regulations were promulgated by the DOJ more than ten years ago. Accordingly, the implementing regulations must also be read in light of clear congressional intent that the ADA might require new technology be used, as it is developed, to further accommodate disabled individuals.[15]

■ Defendants also argue that they are not required to provide closed captioning in their movie theaters because a recent draft of the ATBC Board's ADA Accessibility Guidelines states that both the Guidelines and ADA regulations "do not require captioning of movies for persons who are deaf." Defs. Ex. G, Draft Final Americans with Disabilities Act and Architectural Barriers Act Accessibility Guidelines (April, 2, 2002) at 125. However, Defendants' reliance on the draft ADA Accessibility Guidelines is also misplaced.

The draft guidelines have not yet been adopted as a DOJ regulation, thus they are not binding and not entitled to the Court's deference. *See Paralyzed Veterans of America v. D.C. Arena L.P.,* 117 F.3d 579, 585 (D.C.Cir.1997) (ADA regulations are entitled to *Chevron* deference only after the ATBC Board's language is put out by the DOJ as its own regulation); *Paralyzed Veterans of America v. D.C. Arena L.P.,* 950 F.Supp. 389, 391 (D.D.C.1996) (ATBC Board is not the authoritative agency on ADA matters, but rather has a supplementary, advisory role to the DOJ). In addition, even if the DOJ did implement the draft ADAAG, any explicit language not requiring movie theaters to provide closed captioning could not be upheld if it was inconsistent with the Act's requirement that public accommodations "take those steps that may be necessary to ensure that no individual with a disability" is discriminated against. 28 C.F.R. § 36.303(a) (1992).

■ Finally, the ADA explicitly states that public accommodations can be required to make reasonable modifications for disabled individuals to ensure non-discriminatory access to goods and services. *See* 42 U.S.C. § 12102(b)(2)(A)(ii). RWC clearly fits within the category of auxiliary aids and services that can be required under the ADA, because it serves as an "effective method[ ] of making aurally delivered materials available to individuals with hearing impairments" by "acquisition...of equipment or devices." 42 U.S.C. § 12102(a),(c). In fact, the ADA implementing regulations clearly indicate that "open and closed captioning" are included in the auxiliary aids and services required to be provided by public accommodations. 28 C.F.R. § 36.303(b) (1992).[16]

While Defendants contend that they have complied with the ADA's auxiliary aid requirement by providing Assisted Listening Devices (ALDs) in some of their movie theaters, it is undisputed that ALDs do not serve all Plaintiffs in accessing Defendants' services.[17] Given that ADA im-

---

15. The DOJ's recent settlement of an ADA action against the Disney Corporation also indicates that the DOJ must interpret the Act as requiring some forms of closed captioning—the settlement requires closed captioning, including RWC, at a number of Disney attractions. *See* Pls.' Opp'n at 16–17 and Ex. 3.

16. It is difficult, if not impossible, to reconcile the requirement that public accommodations provide captioning aids, *see* 28 C.F.R. § 36.303, with DOJ's statement that open captioning of movies is not required, *see* 28 C.F.R. § 36.307.

17. ALDs provide assistance to some, but not all, hard of hearing people and provide no assistance to deaf people.

plementing regulations require public accommodations to ensure that persons with disabilities are not denied a service "because of the use of inappropriate or ineffective auxiliary aids," *see* 28 C.F.R. 36, Appendix B(C) (1992) (DOJ's analysis of 28 C.F.R. § 36.303), Defendants' provision of ALDs does not satisfy ADA accessibility requirements.

While the ADA does not contain explicit language or clear Congressional intent requiring or precluding closed captioning in movie theaters, the Act does contain explicit, applicable language which prohibits Defendants discriminating against deaf individuals "in the full and equal enjoyment of the goods, services...or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), and also requires them to provide auxiliary aids to ensure that disabled patrons have access to the services they provide. Accordingly, the Court finds that neither the ADA nor the DOJ implementing regulations explicitly forbid requiring Defendants' movie theaters to exhibit closed captioned films.

## B. Exhibition of RWC–Compatible Films Would Not Change the Nature or Mix of the Services Defendants Provide.

■ Defendants argue that the DOJ implementing regulations only require them to make "reasonable modifications" of their policies, practices, and procedures and provide auxiliary aids and services in order to ensure nondiscriminatory treatment, but do not require them to "provide different goods or services to meet the special needs of the disabled." Defs.' Mot. at 6. However, it is clear that Congress intended the ADA to require more than the general availability of services. Congress expressly stated that the Act addressed the various forms of discrimination encountered by disabled individuals,

which included not only "outright intentional exclusion" but also "failure to make modifications to existing facilities and practices" and "relegation to lesser services." 42 U.S.C. § 12101(a)(5).

Defendants' basic argument is that the ADA requires public accommodations to make their goods or services generally accessible to all patrons (i.e., deaf patrons must be able to buy tickets and sit in the movie theater), but does not require them to provide different goods or services to meet the needs of disabled patrons. In making this argument, Defendants rely on a DOJ implementing regulation stating that the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307 (1992). Defendants claim that § 36.307 clearly indicates they are not required to show closed captioned movies, by comparing themselves to bookstores that must accommodate purchases by blind patrons but are not required to carry Braille books, and to video stores that must allow deaf patrons to check out videotapes but are not required to stock captioned videos. *See* 28 C.F.R. 36, Appendix B(C) (1992) (DOJ's analysis of 28 C.F.R. § 36.307).

Nonetheless, Defendants fail to recognize that they are not similarly-situated to bookstores and video stores that provide goods because Defendants provide the *service* of screening first run movies. *Cf. Treadway v. Local 911*, 2000 WL 875739, *1 (6th Cir.2000)(finding that "a benefit plan offered by an employer is not a 'good' as defined by the ADA"). The DOJ implementing regulation on which they rely concerns "[a]ccessible or special *goods*." 28 C.F.R. § 36.307 (emphasis added); *see also* Black's Law Dictionary 701 (7th ed.1999) (goods are "tangible or movable personal property other than money"). In

fact, when the DOJ considered requiring open captioning of films in movie theaters, it did so with regard to auxiliary aids and *services*, not goods. *See* 28 C.F.R. 36, Appendix B(C) (1992) (under 28 C.F.R. § 36.303, "[m]ovie theaters are not required to present open-captioned films"). Given that the closed captions for RWC-compatible films can be provided to deaf individuals during normal screening of those films, installation of RWC can be required under the ADA because it would not change the nature of the service supplied by Defendants—screening first run movies to the public.

■ Defendants also argue that requiring them to install RWC would result in a change of the mix of the services they provide. Defendants claim that the mix of movies they show would change because relatively few RWC-compatible films have been released by the movie studios. *See* Def. Mot. at 16 (since RWC first became available in 1997, only 2.8% of the first run films released in the United States have been RWC compatible).

However, requiring installation of RWC does not require exhibition of all RWC-compatible films. In fact, Plaintiffs only request that Defendants provide the auxiliary aids necessary to ensure that deaf and hard of hearing patrons are not denied access to the RWC-compatible movies that Defendants screen. Furthermore, the number of RWC-compatible films released has increased each year since 1997, and there is evidence that the number of RWC-compatible films that are released will continue to increase as more movie theaters install the technology.[18] In addition, RWC-compatible movies that have already been released include many popular movies that Defendants' theaters would normally exhibit.[19] Accordingly, Defendants have not demonstrated that the relief requested by Plaintiffs would alter the mix of films they show.

Because closed captions for RWC-compatible films are provided free of charge to Defendants' movie theaters and can be accessed by deaf individuals during normal screening of those films to the general public, Defendants have failed to show that installation of RWC and exhibition of RWC-compatible films would fundamentally alter the nature or mix of the service they provide.[20] It is clear that the relief requested by Plaintiffs—installation of RWC in a fair number of Defendants' screens to make closed captions available

---

**18.** *See* Pls. Opp'n at 3–4 (2 RWC-compatible film released in 1997, 1 in 1998, 9 in 1999, 11 in 2000, 17 in 2001, and 36 projected for release in 2002); Pls. Ex. 2, Christiansen Aff. at ¶ 9 (DreamWorks will permit more of its movies to be captioned with the RWC if more movie theaters install the RWC equipment), Bartelt Att. at ¶ 4 (Sony Pictures prefers to caption its films for the hearing impaired using RWC), and Gleason Aff. at ¶ 4 (President of Worldwide Distribution for MGM "believes [RWC] is the right direction for providing captioning to hearing impaired audiences")

**19.** Recently released RWC-compatible films include Harry Potter and the Sorcerer's Stone (Warner Bros. Pictures 2001), Spiderman (Sony Pictures 2002), Star Wars: Episode Two—Attack of the Clones (Twentieth Century Fox Films 2002), Road to Perdition (DreamWorks Pictures 2002), and Sweet Home Alabama (Buena Vista Pictures 2002)—all of which were conceded to be very popular upon their release. *See* Pls. Ex. 1 (a list of RWC-compatible films released in the U.S. since 1997).

**20.** When deaf plaintiffs in another case brought an ADA suit seeking installation of RWC in the defendants' theaters nationwide, the district court judge declined to adopt most portions of the magistrate judge's findings, including those upholding the defendants' alteration of nature, content and mix claims. *See Cornilles v. Regal Cinemas*, 2002 WL 31469787 (D.Or.2002), *referencing* 2002 WL 31440885 at *6 (D.Or. Jan.3, 2002).

to deaf patrons for those RWC-compatible movies that Defendants would otherwise show—would allow class members to enjoy the first run movies normally shown by Defendants without fundamentally altering the nature or mix of the service they provide. Thus, Defendants are not entitled to summary judgment on this issue.

### C. There Are Material Facts in Dispute Regarding Defendants' Burden for Installation of RWC.

■ Defendants claim that installation of RWC for all their movie screens in the D.C. area is not required under the ADA because it would result in an undue burden. They estimate that it would cost approximately $15,000–16,000 per screen to install RWC, resulting in total costs of approximately $2 million for AMC's 125 screens in the D.C. metro area and $1.5 million for Loews' 101 screens. *See* Defs. Ex. B, Pennington Decl. at ¶ 10; Defs. Ex. C, Norris Decl. at ¶ 10. Defendants also claim that requiring installation of RWC would be unduly burdensome given their "enormous annual losses." Defs. Mot. at 15.[21]

However, Plaintiffs argue that because they are only seeking installation of RWC in approximately 20 screens per Defendant, each Defendant would incur approximately $300,000 in costs using the Defendants' own cost estimates. Plaintiffs also claim that the cost of installing RWC has recently come down and is now approximately $11,225.00 per screen. Pls. Opp'n at 26; *see also* Pls. Ex. 1, Goldberg Aff. at ¶ 15. Plaintiffs further contend that Defendants' costs would be offset by tax ben-

efits and increased revenues from ticket sales to deaf patrons and their families and friends. Finally, Plaintiffs argue that Defendants' financial resources are more than adequate to cover RWC installation costs given AMC's recent purchase of two movie chains for more than $167 million and Loews' recent purchase of a movie chain for $440 million.

There are clearly material facts in genuine dispute as to the undue burden claim, and therefore, summary judgment is not appropriate on this issue.[22]

## IV. Conclusion

Defendants have failed to prove that installation of RWC is expressly not required by the ADA or that such installation would fundamentally alter the nature of the service they provide. Furthermore, there are material facts in dispute as to Defendants' undue burden claim. Accordingly, Defendants' Motion for Summary Judgment is **denied**. An Order will issue with this Opinion.

### *ORDER*

Plaintiffs, deaf and hard of hearing individuals residing in the Washington, D.C., metropolitan area, bring this class action against Defendants, AMC Entertainment, Inc., and Loews Cineplex Entertainment Corp., alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 2000a, *et seq.* (1992). This matter is before the Court on Defendants' Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, submission of Amicus Curiae, the January 22, 2003, Motions Hearing, and the entire

---

**21.** This matter was previously stayed pending Loews' emergence from bankruptcy protection.

**22.** Defendants also argue that requiring installation of RWC constitutes an undue burden as a matter of law, relying on *Cornilles v.*

*Regal Cinemas,* 2002 WL 31469787 (D.Or. 2002). However, *Cornilles* is distinguishable because the court ruled that installation of RWC in *all* theaters *nationwide* would represent an undue burden. *Id.*

record herein, for the reasons stated in the accompanying Memorandum Opinion, it is this 24 day of February, 2003, hereby

**ORDERED,** that Defendants' Motion for Summary Judgment is **denied.**