The State of ARIZONA ex rel. Terry GODDARD, the Attorney General; the Civil Rights Division of the Arizona Department of Law, Plaintiffs,

and

Frederick Lindstrom by and through his parent, Rachel Lindstrom; and Larry Wanger, Plaintiff–Intervenors,

v.

**HARKINS AMUSEMENT ENTERPRISES, INC.; et al., Defendants.**

No. CV–07–703–PHX–ROS.

United States District Court, D. Arizona.

March 28, 2008.

Ann Ruth Hobart, Office of the Attorney General, Phoenix, AZ, Rose Ann Daly–Rooney, Office of the Attorney General, Tucson, AZ, for Plaintiffs.

Edward Leo Myers, Phoenix, AZ, Jose De Jesus Rico, Arizona Ctr. for Disability Law, Tucson, AZ, for Plaintiff–Intervenors.

John James Egbert, Jennings Strouss & Salmon PLC, Phoenix, AZ, Richard Lustiger, Harkins Theatres, Scottsdale, AZ, for Defendants.

## ORDER

ROSLYN O. SILVER, District Judge.

Defendants Harkins Amusement Enter-

prises, Inc., *et al.*[1] ("Harkins") move to dismiss Plaintiffs and Plaintiff–Intervenors pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs.3, 6.) Harkins' motions present the issue of whether the Americans with Disabilities Act ("ADA") and the Arizonans with Disabilities Act ("AzDA") require movie theaters to provide captioned movies for the hearing impaired and to provide descriptions for the seeing impaired. The Court concludes that neither the ADA nor the AzDA require movie theaters to provide these services. Accordingly, Harkins' motions to dismiss will be granted.

## BACKGROUND

### I. Statutory Background

The ADA was designed to eliminate "discrimination against individuals with disabilities." *Barden v. City of Sacramento,* 292 F.3d 1073, 1077 (9th Cir.2002). The ADA proclaims:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Discrimination includes:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden....

*Id.* § 12182(b)(2)(A)(iii) (also referred to herein as "the auxiliary aids and services provision"). The ADA also defines "auxiliary aids and services" to include "effective methods of making aurally delivered materials available to individuals with hearing impairments" and "effective methods of making visually delivered materials available to individuals with visual impairments." *Id.* § 12102(1)(A) & (B).

The Attorney General is authorized to issue regulations concerning Title III of the ADA ("Title III").[2] 42 U.S.C. § 12186(b). The Attorney General's regulations further define "auxiliary aids and services" to include "open and closed captioning." 28 C.F.R. § 36.303(b)(1). However, the Appendix to § 36.303 clarifies: "Movie theaters are not required by § 36.303 to present open-captioned films." 28 C.F.R. Pt. 36, App. B(C) (1992).

Congress also authorized the Architectural and Transportation Barriers Compliance Board ("Access Board")[3] to issue "minimum guidelines"—ADA Accessibility Guidelines ("ADAAG")—for Title III. 42 U.S.C. § 12204(a). The Attorney General's regulations must be consistent with

---

**1.** Defendants in this case include Harkins Amusement Enterprises, Inc. and numerous other Harkins corporations who own and/or operate theaters with 262 screens in Phoenix, Mesa, Tempe, Chandler, Scottsdale, Avondale, Peoria, Flagstaff, Sedona, Prescott Valley, and Yuma. (State's Compl. ¶ 5.)

**2.** Title III includes 42 U.S.C. §§ 12181–12189.

**3.** The Access Board "is comprised of 13 individuals appointed by the president and representatives of 12 government departments or agencies, including the Department of Justice." *Paralyzed Veterans of America v. D.C. Arena L.P.,* 117 F.3d 579, 581 (D.C.Cir.1997).

the ADAAG. *Id.* § 12186(c). In 2004, the Access Board considered new technologies "developed to provide open or closed captioning for movie theaters," and concluded that theaters are not required to provide "built-in features that can help support the provision of captioning technologies." *ADA Accessibility Guidelines for Buildings and Facilities,* 69 Fed.Reg. 44084, 44138 (July 23, 2004).

## II. Factual & Procedural Background

Frederick Lindstrom has profound, bilateral hearing loss. As a result of his disability, Lindstrom cannot hear or discriminate speech and requires textual representations of movie soundtracks. On December 14, 2005, Rachel Lindstrom, the mother of Frederick Lindstrom, called the box office of the North Valley 16 Theatres to find a captioned showing of *King Kong* for her son. Ms. Lindstrom was told that there were no open-captioned showings of *King Kong* or auxiliary aids to display closed captioning at any of the theater auditoriums.[4] Larry Wanger is totally blind in his right eye and has corrected visual acuity of less than 20/400 in his left eye. As a result of his disability, he is unable to see visual aspects of a film and requires an audio representation of its visual aspects. In August 2005, Wanger visited the North Valley 16 Theatres to see a movie with descriptive narrations, but was told that the theater did not have such narrations.

Captions and descriptions are available in many first-run, wide-release films. Film studios decide which movies will be captioned and/or described and provide the captions and descriptions on separate CDs along with the movies. Movie theaters can purchase and install available technology that enable the sensory impaired to view the captions or to hear the descriptions on headsets. Patrons cannot view or hear the captioning and description features on these movies unless the theaters install auxiliary equipment.

■ On December 15, 2006, the State of Arizona filed this action in Maricopa County Court against Harkins on behalf of Lindstrom, Wanger, and a putative class of similarly situated persons. The State alleges that Harkins violated A.R.S. § 41–1492.02 of the AzDA by failing to provide captions for the hearing impaired and descriptions for the seeing impaired. Subsequently, Lindstrom and Wanger ("Plaintiff–Intervenors") intervened alleging that the failure to provide captions and descriptions violated both the AzDA and the ADA.[5] Plaintiffs make no claim that Lind-

---

4. "Captions are textual descriptions of a film's soundtrack, comprised of the dialogue and descriptions of other sounds. There are two types of captioning, open and closed. Open captions are similar to subtitles ... and [are] visible to everyone in the theater.... Closed captioning displays the text only to patrons requiring captions, not to everyone in the theater." *Ball v. AMC Entm't, Inc.,* 246 F.Supp.2d 17, 20 n. 9 (D.D.C.2003).

5. Plaintiff–Intervenors do not claim they have attended or would attend any theater other than the North Valley 16 Theatres. Nevertheless, they argue they have standing to bring claims against the other theaters listed in the complaint citing *Doran v. 7–Eleven, Inc.,* 506 F.3d 1191 (9th Cir.2007). However, *Doran* is distinguishable.

In *Doran,* Doran visited a particular 7–Eleven store on several occasions, but was deterred from visiting the store due to multiple alleged barriers. *Id.* at 1194. The court held that Doran could sue for barriers identified by an expert, even though Doran neither encountered nor had personal knowledge of those barriers. *Id.* at 1194–1202. The barriers which deterred Doran from entering the building also deterred him from discovering the other barriers he had not yet encountered. *Id.* at 1197. The court was concerned that Doran, who planned to return to the particular store, would have to engage in piecemeal litigation to eliminate all the barriers. *Id.* at

strom, Wanger, or the putative class of similarly situated persons have been denied access to services as normally provided by Harkins.

Harkins removed this case to federal court on April 2, 2007, and moved to dismiss the complaints for failure to state a claim. Harkins does not dispute that Lindstrom and Wanger are disabled [6] or that its theaters are public accommodations [7] within the meaning of the ADA. Further, at this stage, Harkins does not argue that providing captioning and descriptions would result in an undue burden. Rather, Harkins contends that the requested captions and descriptions would alter the content of its services, and, therefore, fall outside the scope of the ADA. Harkin's argument requires the Court to interpret the meaning of the requirement in § 12182(b)(2)(A)(iii) that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."

## STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). When reviewing a motion to dismiss, the Court "must determine whether, assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [Plaintiffs] can prove no set of facts to support [their] claims." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) (internal quotations omitted).

## DISCUSSION

### I. Americans with Disabilities Act

#### A. Statutory Language

■ A "simple reading" of the ADA does not compel the answer to the issue raised in this case. *See Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir.1999). However, "[t]he common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated." *Id.* The Ninth Circuit has confirmed that the scope of the ADA's prohibition against discrimination under § 12182(a) is limited to the goods and services offered by an entity. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir.2000) ("The ordinary meaning of [§ 12182(a) ] is that whatever goods or services the place provides, it cannot discrimi-

---

1198. The court explained: "It makes no sense to require a disabled plaintiff to challenge, in separate cases, multiple barriers *in the same facility*, controlled by the same entity, all related to the plaintiff's specific disability." *Id.* at 1201 (emphasis added). However, unlike *Doran*, Plaintiff–Intervenors have brought claims against multiple theaters that they have not entered or ever plan to enter. Thus, the concern in *Doran* about piecemeal litigation to access a *particular* building is not present.

Plaintiff–Intervenors lack standing to challenge any theater other than the North Valley 16 Theatres because they have not alleged they attempted to access any of Harkins' other theaters or that they would access any of the other theaters if the requested services were provided. *See Pickern v. Holiday Quali-*

*ty Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (citing *Moreno v. G & M Oil Co.*, 88 F.Supp.2d 1116, 1116 (C.D.Cal.2000), for the proposition that a "disabled plaintiff could not show actual injury with respect to defendant's other gas stations, because plaintiff '[did] not claim he wants to visit the other stations, or will ever do so' ").

6. The term "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual...." 42 U.S.C. § 12102(2)(A).

7. "Public accommodations" include "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment." *Id.* § 12181(7)(1)(C).

nate on the basis of disability in providing enjoyment of those goods and services."). In other words, the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." *Id.*; *see also McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir.2000) ("a business is not required to alter or modify the goods or services it offers").

■ Plaintiffs attempt to distinguish *Weyer*, *McNeil*, and *Doe* because (1) they interpreted the ADA's general prohibition against discrimination under § 12182(a), not the auxiliary aids and services provision under § 12182(b)(2)(A)(iii), and (2) they concerned insurance coverage, rather than the factual situation here. These distinctions are unpersuasive.

Section 12182(a) sets forth the ADA's general prohibition against discrimination. Section 12182(b)(2)(A)(iii), in turn, fleshes out the definition of "discrimination." Nothing in the law suggests that § 12182(b)(2)(A)(iii) was somehow intended to extend the scope of the ADA. By its own terms, § 12182(b)(2)(A)(iii) has the same coverage as § 12182(a). Its introductory clause states, "[f]or purposes of subsection (a) of this section, discrimination includes...." In fact, *McNeil* rejected the plaintiffs' argument that its interpretation of § 12182(a) would render § 12182(b)(2)(A)(iii) superfluous. 205 F.3d at 186 n. 9. The court explained:

> The provisions in §§ 12182(b)(1)(A)(i)-(iii) concerning the opportunity to benefit from or to participate in a good or service do not imply that the goods or services must be modified to ensure that opportunity or benefit. Rather, this section only refers to impediments that stand in the way of a person's ability to enjoy the goods or services in the form that the establishment normally provides it.

*Id.* Moreover, the ordinary meaning of the words "excluded," "denied," "segregated", and "treated differently" in § 12182(b)(2)(A)(iii) supports an interpretation which requires public accommodations to ensure persons with disabilities have access to the same services that are offered, but does not require public accommodations to offer different services. *See Webster's Third New International Dictionary of the English Language Unabridged* 603, 630, 793, 2057 (2002) (defining "deny" as "to refuse to grant" and "to withhold admittance to"; defining "different" as "partly or totally unlike in nature, form, or quality" and "not the same"; defining "exclude" as "to shut out: restrain or hinder the entrance of" and "to bar from participation, enjoyment, consideration, or inclusion"; defining "segregate" as "to separate or set apart from others").

The courts' reasoning also expressly extends beyond the context of insurance coverage. *See, e.g., Weyer*, 198 F.3d at 1115 ("a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print"); *Doe*, 179 F.3d at 562 (rejecting plaintiffs' interpretation because it would imply that § 12182(a) "regulates the content not only of insurance policies but also of all other products and services"). In addition, the courts' language expressly encompasses the provision of services, as well as the provision of goods. *See, e.g., Weyer*, 198 F.3d at 1115 (the ADA "does not require provision of different goods *or services*") (emphasis added). Thus, the reasoning in *Weyer*, *McNeil*, and *Doe* applies to § 12182(b)(2)(A)(iii). Public accommodations must ensure that persons with disabilities have access to the services they provide (utilizing auxiliary aids and services if necessary), but are not required to

alter or modify the content of those services.

Plaintiffs next argue that the provision of captions and descriptions would not alter the content of Harkins' services. Plaintiffs explain that (1) Harkins would not be required to show any movie that it would not otherwise show at its theater; (2) the auxiliary aids requested would only require Harkins to provide "a functionally equivalent service for people with sensory disabilities"; and (3) film studios provide captions and descriptions with select movies at no additional cost on a separate CD–ROM disk.

First, merely because Harkins would not be required to show movies it would not otherwise offer does not mean that providing captions and descriptions would not change the content of its services. Movie theaters offer motion pictures to the public in a specific format which combines audio and visual elements. However, Plaintiffs' request would require Harkins to alter the form in which it normally provides its services. *See McNeil,* 205 F.3d at 186 n. 9 (Section 12182(b)(1)(A)(i)-(iii) "only refers to impediments that stand in the way of a person's ability to enjoy the goods or services in the form that the establishment normally provides it."). Captioning changes audio elements into a visual format. (*See* Compl. ¶ 12 (captions "provide a textual representation of the sound track of a movie either in [an] open-captioned or closed captioned format").) Descriptions change visual elements into an audio format. (*See id.* ¶ 21 ("The descriptive narration provides information about key visual aspects of a movie by describing scenery, facial expressions and costumes, action settings and scene changes during natural pauses in dialogue").) Persons with sensory disabilities

are not "excluded, denied services, segregated or otherwise treated differently than other individuals" because they are offered the same form of services as other members of the public. *See* 42 U.S.C. § 12182(b)(2)(A)(iii).

Second, the ADA cannot be interpreted to require Harkins to change the format in which it offers movies to provide "a functionally equivalent service" to persons with sensory disabilities. While the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment" of services, *id.* § 12182(a), this language must "be interpreted to have some practical, common sense boundaries." *McNeil,* 205 F.3d at 187. "The unvarnished and sober truth is that in many, if not most, cases, the disabled simply will not have the capacity or ability to enjoy the goods and services of an establishment 'fully' and 'equally' compared to the non-disabled." *Id.* There would seem to be no statutory boundary if the ADA regulated the content of services. *Id.* (providing examples of impractical results from a contrary construction); *see also Doe,* 179 F.3d at 560 (explaining that "a movie theater's refusal to provide a running translation into sign language of the movie's soundtrack" would be an acceptable refusal to "configure a service to make it as valuable to a disabled as to a nondisabled customer"). Simply stated, "[e]qual access does not mean equal enjoyment." *Todd v. American Multi–Cinema, Inc.,* No. Civ.A. H–02–1944, 2004 WL 1764686, at *4 (S.D.Tex. Aug.5, 2004) (finding that a movie theater was not required to provide open or closed captioning for the hearing impaired).

Finally, a movie theater is not required to change the content of the services it offers merely because additional content is offered to theaters free of charge.[8] The

8.  Theaters must still "purchase and install    available technology in their theater auditori-

expense a public accommodation incurs to provide auxiliary aids and service goes to the undue burden limitation in § 12182(b)(2)(A)(iii), not the scope of the ADA's prohibition against discrimination in § 12182(a). Thus, the ADA does not require Harkins to provide captions and descriptions because doing so would alter the content of its services.

## B.  Legislative History

The legislative history of the ADA also confirms that movie theaters are not required to provide captioning. The House Committee Report states: "Open-captioning, for example, of feature films playing in movie theaters, is not required by this legislation. Filmmakers, are, however, encouraged to produce and distribute open-captioned versions of films, and theaters are encouraged to have at least some pre-announced screenings of a captioned version of feature films." H.R.Rep. No. 101–485(II), at 108 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 391.

Plaintiffs argue that this passage is inapplicable because the House Committee Report also states that Congress expected the obligations under the ADA to keep pace with improvements in technology:

> The Committee wishes to make it clear that technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities. Such advances may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.
>
> Indeed, the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times. This is a period of tremendous change and growth involving technology assistance and the Committee wishes to encourage this process.

H.R.Rep. No. 101–485(II), at 108, 1990 U.S.C.C.A.N. at 391. It was primarily upon this passage that the district court in *Ball v. AMC Entertainment, Inc.,* 246 F.Supp.2d 17 (D.D.C.2003), relied to dismiss the Attorney General's regulations and to conclude that a movie theater could be required to provide closed-captioning services. Yet, this passage of legislative history merely restates what was already made express by the ADA—what was once too burdensome may become practical as technology advances. *See* 42 U.S.C. § 12182(b)(2)(A)(iii) (defining discrimination to include the failure to provide auxiliary aids and services unless doing so "would result in an undue burden"). This passage did not, however, change the scope of the ADA.[9]

## C.  ADA Regulations and Guidelines

Finally, the ADA regulations and guidelines support an interpretation that Harkins is not required to provide captioning for the hearing impaired and descriptions

---

ums" to enable persons with disabilities to view the captions or hear the descriptions. (Compl.¶ 12.)

**9.**  The district court in *Ball* noted that, "[i]t is difficult, if not impossible, to reconcile the requirement that public accommodations provide captioning aids, *see* 28 C.F.R. § 36.303, with DOJ's statement that open captioning of movies is not required, *see* 28 C.F.R. § 36.307." 246 F.Supp.2d at 23 n. 16. However, the apparent conflict between these two regulations is easily resolved if providing open captioning of movies is viewed as changing the content of services offered by theaters, and, therefore, falling outside the scope of the ADA.

for the seeing impaired. The language in 28 C.F.R. § 36.303(a) mirrors the language in 42 U.S.C. § 12182(b)(2)(A)(iii). In the appendix to this regulation, the Attorney General explained: "Movie theaters are not required by § 36.303 to present open-captioned films." 28 C.F.R. Pt. 36, App. B(C).

■ An agency's interpretation of its own regulations is owed substantial deference when the meaning of regulatory language is ambiguous and the agency's interpretation is reasonable. *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.,* 339 F.3d 1126, 1131 (9th Cir.2003). As stated above, a "simple reading" of this language does not compel an answer to the issue raised in this case and an interpretation that theaters are not required to provide open-captioning is reasonable. Accordingly, the Attorney General's interpretation is entitled to deference.

Nevertheless, Plaintiffs argue that this regulations is not conclusive because it only addresses open-captioning, not closed captioning or descriptions. However, Plaintiffs offer no reason why the Attorney General would distinguish closed captioning or descriptions from open captioning in determining what is covered under the ADA. In addition, the Access Board has specifically concluded that the ADAAG does not require theaters to provide closed captioning. *ADA Accessibility Guidelines for Buildings and Facilities,* 69 Fed.Reg. at 44138. The ADAAG was "made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." *See Skidmore v. Swift & Co.,* 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944). As such, and in the absence of a contrary interpretation by the Attorney General, the Court is persuaded that the ADAAG's interpretation represents "a body of expe-

rience and informed judgment to which courts and litigants may properly resort for guidance." *See id.* The Attorney General's interpretation and the ADAAG confirm that Harkins is not required to provide captions or descriptions.

Thus, given the language of § 12182(b)(2)(A)(iii), the reasoning in *Weyer, McNeil,* and *Doe,* the legislative history, and the ADA regulations and guidelines, the Court concludes that the ADA does not require Harkins to provide captions or descriptions. Section 12182(b)(2)(A)(iii) requires public accommodations to ensure that persons with disabilities have access to the services they provide (utilizing auxiliary aids and services if necessary), but does not require public accommodations to alter or modify the content of their services. The requested captions and descriptions would modify the content of the services Harkins offers.

## II. Arizonans with Disabilities Act

■ Plaintiffs argue that the AzDA requires Harkins to provide captions and descriptions. Harkins argues that the provision of the AzDA upon which Plaintiffs rely, A.R.S. § 41–1492.02, is "completely unintelligible and therefore unenforceable." Plaintiffs concede that the provision at issue is "ambiguous" and suggest that the AzDA be interpreted to be consistent with the ADA. Plaintiffs cite the historical and statutory notes to the AzDA which states that the Arizona Legislature "intended that [the AzDA] be consistent with the Americans with Disabilities Act of 1990 (42 United States Code §§ 12101 through 12213 and 47 United States Code §§ 225 and 611) or its implementing regulations." 1992 Ariz. Sess. Laws Ch. 224, § 1(C). The Court need not address Harkins' vagueness argument. The ADA does not require movie theaters to provide captions or descriptions, and Plaintiffs make

no argument that the AzDA is broader than the ADA.[10] Thus, the AzDA does not require Harkins to provide captions or descriptions for its movies.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss Complaint of Plaintiff–Intervenors (Doc. 3) is **GRANTED.**

**IT IS FURTHER ORDERED** Defendants' Motion to Dismiss (Doc. 6) is **GRANTED.**

**IT IS FURTHER ORDERED** Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 30) is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** the Clerk of the Court shall close this case.

---

**10.** If anything, the problems identified by Harkins would limit, not expand the scope of the AzDA.