**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF ARIZONA, ex rel. Terry
Goddard, the Attorney General,
and THE CIVIL RIGHTS
DIVISION OF THE ARIZONA
DEPARTMENT OF LAW,
            *Plaintiffs-Appellants,*

and

FREDERICK LINDSTROM by and
through his legal guardian, RACHEL
LINDSTROM, and LARRY WANGER,
    *Plaintiff-Intervenors-Appellants.*

v.

HARKINS AMUSEMENT ENTERPRISES,
INC.; HARKINS ENTERPRISES INC.;
HARKINS CAMEL VIEW THEATRES,
INC.; HARKINS THEATRES, INC.;
HARKINS CENTERPOINT, INC.;
HARKINS SHEA CINEMAS, LLC;
HARKINS SEDONA CINEMAS, LLC;

No. 08-16075

D.C. No.
2:07-cv-00703-ROS

OPINION

6473

HARKINS CINEMAS, LLC; HARKINS
ARIZONA MILLS CINEMAS, LLC;
HARKINS METRO CENTER CINEMAS,
LLC; HARKINS REEL DEALS, LLC;
HARKINS PHOENIX CINEMAS, LLC;
HARKINS CHANDLER FASHION
CENTER CINEMAS, LLC; HARKINS
SCOTTSDALE 101 CINEMAS, LLC;
HARKINS YUMA PALMS, LLC;
HARKINS TEMPE MARKETPLACE,
LLC; HARKINS ADMINISTRATIVE
SERVICES, INC.; RED'S MOVIOLA I,
LLC; RED'S MOVIOLA, INC.;
HARKINS SPECTRUM, LLC; HARKINS
CASA GRANDE, LLC; HARKINS
INVESTMENTS, LLC; HARKINS PARKE
WEST, LLC; HARKINS SANTAN
VILLAGE, LLC; HARKINS TUCSON
SPECTRUM, LLC; HARKINS
CHANDLER CROSSROADS, LLC;
HARKINS NORTERRA, LLC,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
January 13, 2010—San Francisco, California

Filed April 30, 2010

Before: Alex Kozinski, Chief Judge, Procter Hug, Jr. and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hug

## COUNSEL

Rose A. Daly-Rooney and Cathleen M. Dooley, Assistant Attorneys General, Tucson, Arizona, for the appellants. Jose de Jesus V. Rico, Arizona Center for Disability Law, Tucson, Arizona, for the appellants-intervenors.

John J. Egbert, The Collier Center, Phoenix, Arizona, and Richard Lustiger, General Counsel, Harkins Theatres, Scottsdale, Arizona, for the appellees.

Brian East, Advocacy, Inc., Austin, Texas; Linda M. Dardarian, Goldstein, Demchak, Baller, Borgen & Dardarian, Oakland, California; John F. Stanton, Howrey LLP, Washington, D.C.; John F. Waldo, Washington State Communication Access Project, Bainbridge Island, Washington; Marc P. Charmatz, National Association of the Deaf Law and Advocacy Center, Silver Spring, Maryland; Angela M. Miller, Attorney, Civil Rights Division, Department of Justice, Washington, D.C.; M. Brett Burns, Hunton & Williams LLP, San Francisco, California; Steven John Fellman, GKG Law, PC, Washington, D.C., for the amici curiae.

## OPINION

HUG, Circuit Judge:

The State of Arizona and Plaintiff-Intervenors Frederick Lindstrom and Larry Wanger brought this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Arizonans with Disabilities Act ("AzDA"), Ariz. Rev. Stat., §§ 41-1492-41-1492.11, to remedy what they allege are discriminatory accommodations at movie theaters owned by Harkins Amusement Enterprises, Inc. and its affiliates ("Harkins"). Plaintiffs contend that Harkins's failure to provide (1) open or closed captioning for

hearing impaired patrons and (2) audio descriptions of a movie's visual elements for visually impaired patrons violates the ADA and the AzDA. The district court granted Harkins's motion to dismiss for failure to state a claim on the basis that the ADA and the AzDA do not require movie theaters to alter the content of their services. Because closed captioning and audio descriptions are correctly classified as "auxiliary aids and services" that a movie theater may be required to provide under the ADA, we conclude the district court erred in finding that these services are foreclosed as a matter of law.

## I.

Plaintiff-Intervenor Frederick Lindstrom has hearing loss so severe that he cannot hear or discriminate speech. Because of his hearing loss, Lindstrom does not fully appreciate a movie's soundtrack. Lindstrom alleges that three technologies would allow him to more fully enjoy movies despite his hearing impairment.

The first two technologies employ open captioning, a technique that displays captions on a movie screen for an entire audience. One type of open captioning is achieved by engraving text onto each individual frame of a film. Only a limited number of films are engraved with captions. A second method of open captioning uses open caption projection systems, which project captions through a separate projector onto a movie screen. Movie theaters may turn open captioning projection systems on or off, depending on whether a patron has requested captions.

The third technology employs closed captioning, a technique that displays captions to individual viewers using a seat-based captioning device. One brand of seat-based captioning is Rear Window Captioning, which displays captions from a computer disc that is synchronized with a movie. As a movie appears on a theater's screen, captions are transmitted to an LED data panel installed on the rear wall of a theater,

where the text is reversed. Patrons use portable, clear reflector panels that make the captions appear superimposed on or beneath the movie screen. There are other seat-based captioning systems as well, such as wearable caption displays.

Major movie studios distribute a significant number of wide-release movies with captions for use with Rear Window Captioning and open caption projection systems. However, accessibility to these services is limited to theaters that have equipment for Rear Window Captioning or open caption projection systems.

Plaintiff-Intervenor Larry Wanger is totally blind in his right eye and has corrected visual acuity of less than 20/400 in his left eye. Because of his impairment, Wanger cannot see the visual aspects of a movie. Wanger alleges that a technology known as "descriptive narration" would allow him to appreciate visual aspects of a movie by using a headset. Descriptive narration enables people to hear information about key visual aspects of a movie through descriptions of scenery, facial expressions, costumes, action settings, and scene changes during natural pauses in dialogue. Major movie studios distribute wide-release movies with descriptive narration capability, but accessibility to this service is limited to theaters that have equipment for audio descriptions.

Harkins owns and operates 21 theaters with 262 auditoriums in Arizona. Harkins shows movies with engraved open captioning, but only at limited times at two theater locations. None of Harkins's Arizona theaters have equipment for descriptive narration.

In August 2005, Larry Wanger visited Harkins's North Valley 16 Theaters to see a movie with descriptive narration. A Harkins employee informed him that the theater did not have descriptive narration. On December 14, 2005, Rachel Lindstrom, Frederick Lindstrom's mother, called the box office of North Valley 16 Theaters to find a captioned show-

ing of *King Kong*. Ms. Lindstrom was told that there were no open-captioned showings of *King Kong* or auxiliary aids to display closed captioning at any of the theater's auditoriums.

Larry Wanger and Rachel Lindstrom, on behalf of her son, filed complaints of public accommodation discrimination with Arizona's Civil Rights Division. After an investigation, the Division found that there was reasonable cause to believe that Harkins discriminated against Frederick Lindstrom and Larry Wanger by denying full and equal enjoyment of Harkins's services in violation of the AzDA.

The State of Arizona subsequently filed suit in Arizona Superior Court alleging violations of the AzDA on behalf of Frederick Lindstrom, Larry Wanger, and a putative class of similarly situated persons. Lindstrom and Wanger also joined the suit as plaintiff-intervenors alleging violations of the ADA and AzDA. Harkins removed the case to the United States District Court for the District of Arizona and moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted the motion in a published March 28, 2008, order, *Arizona v. Harkins Amusement Enterprises, Inc.*, 548 F. Supp. 2d 723 (D. Ariz. 2008), which Plaintiffs now appeal.

## II.

We review de novo the district court's dismissal for failure to state a claim. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). We accept the Plaintiffs' allegations as true and construe them in the light most favorable to Plaintiffs. *Id.* Dismissal is inappropriate unless Plaintiffs' complaint fails to state a claim for relief that is plausible on its face. *Id.*

## A.   Americans with Disabilities Act

[1] Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination

against individuals with disabilities . . . ." 42 U.S.C. § 12101(b)(2). Title III of the ADA prohibits discrimination by public accommodations, prescribing generally that

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). The parties do not dispute that Plaintiffs Lingstrom and Wanger are disabled or that Harkins owns a place of public accommodation. This appeal centers on whether Plaintiffs have plausibly alleged that Harkins discriminated against them on account of their disabilities.

**[2]** Title 42 U.S.C. § 12182(b)(2)(A)(iii) provides that discrimination by public accommodations includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**[3]** The ADA defines "auxiliary aids and services":

The term "auxiliary aids and services" includes—

(A) qualified interpreters *or other effective methods of making aurally delivered materials available to individuals with hearing impairments*;

(B) qualified readers, taped texts, *or other effective methods of making visually delivered materials available to individuals with visual impairments*;

(C) acquisition or modification of equipment or devices; and

(D) *other similar services and actions.*

42 U.S.C. § 12103(1) (emphases added). Federal regulations provide more examples:

The term "auxiliary aids and services" includes—

(1) *Qualified interpreters*, notetakers, *computer-aided transcription services*, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, *closed caption decoders*, *open and closed captioning*, telecommunications devices for deaf persons (TDD's), *videotext displays*, *or other effective methods of making aurally delivered materials available to individuals with hearing impairments*;

(2) *Qualified readers*, *taped texts*, *audio recordings*, Brailled materials, large print materials, *or other effective methods of making visually delivered materials available to individuals with visual impairments*;

(3) Acquisition or modification of equipment or devices; and

(4) *Other similar services and actions*.

28 C.F.R. § 36.303(b) (emphases added).

**[4]** Movie captioning and audio descriptions clearly are auxiliary aids and services. Captioning and audio descriptions are "effective methods of making [aurally or visually] delivered materials available to individuals with [hearing and visual] impairments." 42 U.S.C. § 12103(1)(A)-(B); 28 C.F.R. § 36.303(b)(1)-(2); *see Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (hearing-impaired plaintiff survives summary judgment with claim that superior court failed to provide real-time captioning of oral testimony). Indeed, "open and closed captioning" and "audio recordings" are listed as examples of auxiliary aids and services in the regulations. The district court reasoned that captioning and descriptive narration do not fall within § 12182(b)(2)(A)(iii)'s mandate because, under *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000), "the scope of the ADA's prohibition against discrimination under § 12182(a) is limited to the goods and services offered by an entity." *Harkins*, 548 F. Supp. 2d at 727-28 (internal quotation marks omitted). In other words, the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." *Weyer*, 198 F.3d at 1115. We now turn to *Weyer* and its bearing on this case.

*Weyer* concerned an insured's challenge to her long-term disability insurance policy's limit on mental illness benefits that did not similarly limit non-mental illness benefits. 198 F.3d at 1107-08. The plaintiff alleged that the insurer and her employer violated the ADA by offering and administering a plan that discriminated against those with mental disabilities. *Id.* at 1108. Affirming the district court's grant of summary judgment, we held that the insurer could not be held liable under Title III because, among other reasons, Title III does not address the terms of policies that the insurer sold. *Id.* at 1115. We reasoned:

> Title III prohibits discrimination in the enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." The ordinary meaning of this language is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services. This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided. Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print. Likewise, an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled.

*Id.* (internal quotation marks, brackets, and footnote omitted). We further concluded that the plaintiff's Title III claim against her employer, Fox, similarly failed:

> [T]here is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else, so insurance distinctions that apply equally to all employees cannot be discriminatory. Fox did not treat Weyer any differently because of her disability. It simply gave her the same opportunity that it gave all the rest of its employees—buy into the group policy with the limitation at the cheaper, group price or buy her own individual insurance coverage without the limitation at whatever the market price may be.

*Id.* at 1116 (footnote omitted). Analogizing from *Weyer*, Harkins argues that the ADA does not require it to alter the content of its services by offering captions and descriptive narration; rather, the ADA only requires it to offer all persons equal access to its services.

**[5]** We disagree with Harkins that captioning and descriptive narration fall outside the ADA as a matter of law. As stated previously, 42 U.S.C. § 12182(b)(2)(A)(iii) provides that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals *because of the absence of auxiliary aids and services* . . . ." (emphasis added). In arguing that the ADA's requirement of auxiliary aids and services is limited by *Weyer*, Harkins puts the cart before the horse: *Weyer* does not limit subsection 42 U.S.C. § 12182(b)(2)(A)(iii)'s requirement that a public accommodation provide auxiliary aids and services; the requirement that establishments provide auxiliary aids and services limits *Weyer*'s general rule that public accommodations do not have to provide different services for the disabled. Although *Weyer* may be controlling in the provision of goods and services generally, here Plaintiffs are seeking an auxiliary aid, which is specifically mandated by the ADA to prevent discrimination of the disabled.

For similar reasons, Harkins's reliance on *McNeil v. Time Insurance Co.*, 205 F.3d 179 (5th Cir. 2000), is misplaced. In *McNeil*, the plaintiff purchased a health insurance policy that limited coverage for AIDS-related benefits to $10,000 during the first two years of the policy. *Id.* at 182. Within the first year of the policy, the plaintiff was diagnosed with AIDS. *Id.* When the insurance company refused to pay more than $10,000 of his medical bills, the plaintiff brought suit under Title III of the ADA. *Id.* Affirming a grant of summary judgment, the Fifth Circuit held that the plain language of Title III "demonstrates that a business is not required to alter or modify the goods or services it offers to satisfy Title III"; therefore, because the policy offered the same terms to those without AIDS, the policy's limit did not discriminate on the basis of basis of disability. *See id.* at 186, 188-89.

The *McNeil* court also noted that "[t]he provisions in
§§ 12182(b)(1)(A)(i)-(iii) concerning the opportunity to bene-
fit from or to participate in a good or service do not imply that
the goods or services must be modified to ensure that opportu-
nity or benefit. Rather, this section only refers to impediments
that stand in the way of a person's ability to enjoy that good
or service in the form that the establishment normally pro-
vides it." *Id.* at 186 n.9. The district court in this case relied
on this passage to reason that § 12182(b)(2)(A)(iii)[1] does not
require accommodations to offer different services. *Harkins*,
548 F. Supp. 2d at 728.

The district court's reasoning effectively eliminates the
duty of a public accommodation to provide auxiliary aids and
services. By its very definition, an auxiliary aid or service is
an additional and different service that establishments must
offer the disabled. For example, a courthouse that was acces-
sible only by steps could not avoid ADA liability by arguing
that everyone—including the wheelchair bound—has equal
access to the steps. And an office building could not avoid
having to put Braille numbering on the buttons in its elevator
by arguing that everyone—including the blind—has equal
access to the written text. Although *Weyer* and *McNeil* sup-
port the proposition that the content of a good or service need
not be altered under the ADA, neither of those decisions turn
on whether a place of public accommodation must provide an
auxiliary aid or service that falls within the mandate of
§ 12182(b)(2)(A)(iii).

**[6]** Harkins also contends that regulations promulgated by
the Department of Justice defeat any requirement that Harkins
provide captioning or descriptive narration. In particular,
Harkins points to the DOJ's Preamble to Regulation of Non-
discrimination on the Basis of Disability by Public Accommo-

---

[1]The district court may have overlooked that *McNeil* referenced
§§ 12182(b)(1)(A)(i)-(iii) and not § 12182(b)(2)(A)(iii). *See Harkins*, 548
F. Supp. 2d at 728.

dations and in Commercial Facilities, which provides commentary on Title 28, part 36 of the Code of Federal Regulations. There, the commentary plainly states that "[m]ovie theaters are not required by § 36.303 to present open-captioned films." 28 C.F.R. pt. 36, App. B(C), at 727 (2009).

Plaintiffs dispute that the commentary precludes a court from requiring open captioning through open caption projection systems, which did not exist when the commentary was first published in 1991. Plaintiffs cite to two authorities in an effort to distinguish between engraved open captioning and open caption projection systems. The first, 28 C.F.R. § 36.307(a), provides, "This part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." Plaintiffs argue that the commentary's provision concerning open captioning is no longer viable now that open captioning is available through open caption projection systems, which are not special goods. Plaintiffs also point to a House Report suggesting that courts should reconsider the auxiliary aids and services required by the ADA as new technology develops:

> The Committee wishes to make it clear that technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities. Such advances may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.

H.R. Rep. No. 101-485(II), at 108 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 391.

[7] We disagree with Plaintiffs that the DOJ's commentary has been superceded by technological development. If this

court were to accept Plaintiffs' interpretation, the DOJ's detailed interpretive guidance could be circumvented whenever a new technology for providing open captioning becomes available. Entities such as Harkins should be able to rely on the plain import of the DOJ's commentary until it is revised. Because the commentary to Title 28, part 36.303 states that open captions are not required by § 36.303, we conclude that open captioning is not mandated by the ADA as a matter of law.[2]

**[8]** However, the DOJ's commentary does not insulate Harkins from providing closed captioning. The commentary does not mention closed captioning, and the difference between open and closed captioning is more than linguistic. Only individual viewers see closed captions, whereas the entire audience sees open captions and is likely distracted by them. Thus, unlike open captioning, closed captioning is not foreclosed by the commentary. *See also* 28 C.F.R. § 36.303(b)(1) (defining "auxiliary aids and services" to include "closed captioning").

In an effort to avoid providing captioning, Harkins points to two interpretations of the ADA contained in the Federal Register. The first interpretation comes from a July 23, 2004,

---

[2]Although the DOJ's interpretation appears to conflict with the 28 C.F.R. § 36.303(b)(1)'s inclusion of open captioning as an example of "auxiliary aids and services," the commentary is nonetheless entitled to deference in this case. As stated by the Supreme Court in *Thomas Jefferson University v. Shalala*, we must defer to an agency's interpretation of its own regulation unless an "alternative reading is compelled by the regulation's plain language or by other indications of [the agency's] intent at the time of the regulation's promulgation." 512 U.S. 504, 512 (1994). Although 28 C.F.R. § 36.303(b)(1) lists open captioning as an example of auxiliary aids and services, not every auxiliary aid and service is mandated by the ADA. Establishments can avoid providing auxiliary aids and services by showing that they fundamentally alter its service or impose an undue burden. 28 C.F.R. § 36.303(a). In the context of open captioning, the DOJ could have reasonably concluded that open captioning would constitute a fundamental alteration of the movie screening.

set of guidelines published by the Architectural and Transportation Barriers Compliance Board ("Access Board") and states that: "[The American with Disabilities Act Accessibility Guidelines] and the Department of Justice's ADA regulations do not require captioning of movies for persons who are deaf." 69 Fed. Reg. 44084-01, 44138. The second interpretation was published in a DOJ notice of proposed rulemaking on June 17, 2008, and states, "The Department is considering options under which it might require that movie theater owners and operators exhibit movies that are captioned for patrons who are deaf or hard of hearing." 73 Fed. Reg. 34508-01, 34530.[3] Harkins contends that the Access Board's interpretation shows that captions are not required under the ADA, and the DOJ's use of the term "might" contained in the second interpretation implies that there is no such requirement under the current regulations.

The agency interpretations proffered by Harkins do not stand on the same footing as the DOJ's commentary to title 28, part 36.303 contained in the Code of Federal Regulations. This court has declined to give deference to Access Board guidelines that have not yet been adopted by the DOJ.[4] *See Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1027 n.1 (9th Cir. 2008). Moreover, we have refused to defer to a proposed regulation published by the DOJ itself. *See Cal. Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1173 (9th Cir. 1990). The DOJ's interpretation in a notice of proposed rulemaking is similarly unpersuasive. The ADA interpretations urged by Harkins are, therefore, of no consequence here.

---

[3]The DOJ's website states that the DOJ withdrew its draft final rules to amend the implementing regulations to Title III of the ADA while the rules are reviewed by officials appointed by President Obama. *See* Proposed ADA Regulations Withdrawn from OMB Review, http://www.ada.gov/ADAregswithdraw09.htm (last visited Apr. 21, 2010).

[4]Amicus National Association of Theatre Owners, Inc.'s reliance on a May 2, 2001, Access Board press release is similarly misplaced, as the DOJ has not adopted the Access Board's position as its own. *Cf. Miller*, 536 F.3d at 1031.

Finally, we are unpersuaded by Harkins's argument that requiring it to provide captions and descriptive narration would require us to ignore the word "auxiliary" in 42 U.S.C. § 12182(b)(2)(A)(iii), which connotes a "subsidiary" or "supplementary" relationship of one thing to another. Appellee Br. at 19 (*citing Webster's New Twentieth Century Dictionary* 128 (2d ed. 1979)). First, the ADA provides its own definition of "auxiliary aids and services," which includes "effective methods of making aurally delivered materials available to individuals with hearing impairments[,]" "effective methods of making visually delivered materials available to individuals with visual impairments[,]" and "acquisition or modification of equipment or devices . . . ." 42 U.S.C. § 12103(1). Closed captioning and descriptive narration fall comfortably within the scope of this definition. Furthermore, even accepting Harkins's parsing of the statutory definition, movie theaters' primary service is to screen films. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1084 (9th Cir. 2004). Thus, captions and descriptive narration are not so removed from a theater's usual business that they cannot be deemed "subsidiary" or "supplementary."

**[9]** In sum, the district court was correct in holding that the ADA does not require Harkins to utilize open captioning as a matter of law. However, the district court erred in holding that closed captioning and descriptive narration are not required by the ADA. Our holding does not necessarily mean that Plaintiffs will be entitled to closed captioning and descriptive narration in Harkins's theaters. Harkins may still be able to avail itself of several defenses, such as the contention that the devices would fundamentally alter the nature of its services or constitute an undue burden. *See* 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a).

## B.   Arizonans with Disabilities Act

The district court based its dismissal of Plaintiffs' AzDA claim on its finding that "Plaintiffs make no argument that the

AzDA is broader than the ADA." *Harkins*, 548 F. Supp. 2d at 731-32. The district court never addressed whether the AzDA is unconstitutionally vague or requires establishments to provide auxiliary aids and services to disabled individuals. We decline to do so in the first instance, and the district court may consider Harkins's arguments on remand.

## C.   Standing

Finally, Plaintiffs challenge the district court's finding that Plaintiff-Intervenors lack standing to challenge a failure to provide captions or descriptive narration at any theater besides North Valley 16. The district court found the Plaintiffs lacked standing to challenge a lack of accommodations in other theaters because "they have not alleged they attempted to access any of Harkins' other theaters or that they would access any of the other theaters if the requested services were provided." *Harkins*, 548 F. Supp. 2d at 726 n.5. We need not reach the matter of standing given that the district court did not consider Plaintiff-Intervenors' motion for leave to file a first amended complaint. *See id.* at 732 (denying Plaintiff-Intervenors' motion for leave to file a first amended complaint as moot). The proposed first amended complaint alleges that Lindstrom and Wanger attempted to find theaters other than North Valley 16 that would accommodate their needs. Because the district court did not consider these allegations, the district court must reconsider Plaintiff-Intervenors' motion to amend their complaint in light of this court's conclusion that they have stated a claim under the ADA.

## III.

**[10]** The district court incorrectly construed the mandate of 42 U.S.C. § 12182(b)(2)(A)(iii) that a place of public accommodation must provide auxiliary aids and services so that a disabled person is not denied the public accommodation's services. We therefore reverse the district court's dismissal of

Plaintiffs' ADA claim seeking closed captioning and descriptive narration. Because the commentary to part 36.303, title 28 of Code of Federal Regulations states that movie theaters are not required to present open-captioned films, however, we affirm the district court's finding that open captioning is not required by the ADA as a matter of law. Finally, because the district court did not consider Plaintiff-Intervenors' motion to file a first amended complaint, the district court must reconsider the issue of standing on remand.

Each party is to bear their own costs.

**AFFIRMED IN PART AND REVERSED IN PART.**